IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MEGAN M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. CBD-19-3395** |
| | ) | |
| **KILOLO KIJAKAZI[1],** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Megan M. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 14, Plaintiff's Alternative Motion for Remand, ECF No. 14, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 17. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

I. **Procedural Background**

On April 21, 2016, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning September 15, 2015. R. 14. Plaintiff alleged disability due to bipolar disorder, anxiety, and ADHD. R. 208, 217, 229, 241. Plaintiff's claims were initially denied on July 20, 2016, and upon reconsideration on October 28, 2016. R. 14. An administrative hearing was held on July 27, 2018. R. 14. On November 16, 2018, Plaintiff's claims for DIB and SSI were denied. R. 28. Plaintiff sought review by the Appeals Council, which concluded on September 25, 2019, that there was no basis for granting the request for review. R. 2. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

II. **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).  The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c).  In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a).  The ALJ must present a "narrative discussion describing

4

how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 16–28. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 15, 2015, the alleged onset date. R. 16. At step two, under 20 C.F.R. § 404.1520(c) and §416.920(c), the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, lumbar spine, obesity; and mental disorders variously diagnosed to include: bipolar disorder, major depressive disorder, unspecified anxiety disorder, panic disorder, ADHD, and cluster B personality traits. *Id.* The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff's] ability to perform basic work activities." *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 17.  Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c).  The ALJ discerned that Plaintiff had the following limitations:

> [O]ccasional ladders, ropes, and scaffolds; and occasional exposure to workplace hazards such as dangerous moving machinery but no exposure to unprotected heights.  [Plaintiff] can perform unskilled work with ordinary breaks at an SVP 1 or 2 involving simple, routine tasks in a static work environment where changes in tasks are infrequent and explained when they do occur and where the pace of productivity is not dictated by an external source over which [Plaintiff] has no control, such as conveyor belts.  Tasks should generally involve things instead of people with no contact with the general public, and occasional contact with supervisors and coworkers, with no tandem work assignments.

R. 19.  At step four, the ALJ determined Plaintiff is capable of performing past relevant work as a kitchen helper.  R. 26.  The ALJ found that Plaintiff has not been under a disability, as defined in the SSA.  R. 28.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or in the alternative, remand the case to the Commissioner for further proceedings, alleging that Defendant's final decision is not supported by substantial evidence.  Pl.'s Mem. in Supp. of Pl.'s Mot. 5, ECF No. 14–2.  Specifically, Plaintiff avers that 1) the ALJ's determination is unsupported by substantial evidence; and 2) the ALJ failed to resolve the apparent conflicts between the vocational testimony and the Dictionary of Occupational Titles.  *Id.* at 9, 19.  For the reasons set forth below, the Court **REVERSES** the ALJ's decision and **REMANDS** the matter for further proceedings.

**A.    The ALJ's RFC analysis was not supported by substantial evidence because the ALJ failed to build a logical bridge from the objective medical evidence to the RFC.**

Plaintiff avers that the ALJ "did not build an 'accurate and logical bridge' with respect to her analysis of Plaintiff's ability to perform work 'where the pace of productivity is not dictated by an external source over which she has no control, such as conveyor belts.'" *Id*. at 12, 19. Plaintiff argues that the ALJ failed to "cite substantial evidence . . . to show that a pace accommodation would permit Plaintiff to work consistently on a sustained basis." *Id*. at 18. Defendant contends that the "ALJ properly evaluated Plaintiff's RFC and substantial evidence of record supports the ALJ's RFC finding."  Def.'s Mem. in Supp. of Def.'s Mot. 5, ECF No. 17–1.  This Court agrees with Plaintiff.

Generally, the Court will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.  *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 634).  But when performing an RFC assessment, the ALJ must provide a narrative discussion with the RFC assessment describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A).  "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (emphasis in original).

A proper RFC analysis has three components: (1) evidence; (2) logical explanation; and (3) conclusion.  *Thomas*, 916 F.3d at 311.  The ALJ's logical explanation is just as important as the other two.  *Id*.  Without a proper narrative discussion from the ALJ, it is impossible for the Court to determine whether the decision was based on substantial evidence.  *Geblaoui v.*

*Berryhill*, No. CBD-17-1229, 2018 WL 3049223, at *3 (D. Md. June 20, 2018) (citing *Jones v. Astrue*, No. SKG-09-1683, 2011 WL 5833638, at *14 (D. Md. Nov. 18, 2011)).

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's mental health impairments. R. 19-26. The ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. R. 19. First, the ALJ discussed Plaintiff's allegations, in which Plaintiff stated *inter alia* that she is disabled by her panic attacks. R. 19-20. In the narrative discussion, the ALJ noted that Plaintiff had panic attacks while working as a cashier; Plaintiff's medications were still being adjusted and she once had hallucinations on a previous medication; Plaintiff avoids Walmart as a trigger of her panic attacks; Plaintiff has missed appointments because of her panic attacks; and that Plaintiff alleged difficulty concentrating and remembering. *Id.* The ALJ concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . .". R. 20.

Next in the ALJ's narrative discussion, the ALJ extensively discussed several of Plaintiff's appointments and summarized the complaints and results of the appointments she cited. R. 20-25. After a review of the medical records, the ALJ explained that:

> While [Plaintiff] sometimes displayed a tearful affect on examinations, cried throughout the hearing, and she reported irritability and panic attacks in crowded areas, she also reported being able to drive and shop and she was generally cooperative and engaged with at least fair eye contact on examination, which supports finding her capable of performing tasks that generally involve things instead of people with no contact with the general public, occasional contact with supervisors and coworkers, and no tandem work assignments. [Plaintiff's] panic attacks and her reported difficulty with past work support finding her limited to performing work where the pace of productivity is not dictated by

an external source over which she has no control (internal citations omitted). [Plaintiff's] examinations found intact memory, and she was often able to focus during her examinations (internal citations omitted). The record shows largely conservative treatment with one psychiatric hospitalization for acute symptoms, and [Plaintiff] reported feeling much better after her medications were adjusted. [Plaintiff] also declined medication for her bipolar disorder at times and attempted to wean herself off her other medications (internal citations omitted). [Plaintiff] was able to drive and attend appointments without assistance. [Plaintiff] was also able to manage her personal care independently (internal citations omitted).

R. 25. When discussing the opinion evidence, the ALJ further stated:

> The record supports finding limits on [Plaintiff's] capacity for social interaction, maintenance of productive pace, and ability to complete complex tasks; however, it does not support finding [Plaintiff] would need more than ordinary breaks while performing simple, routine tasks. Plaintiff was often able to focus during examinations and she reported being able to read, clean, and drive. . . While the consultants noted [Plaintiff] can be hard to get along with, she is also tearful upon occasion and as such, [Plaintiff] has been limited from tasks involving contact with the general public and tandem work assignments.

*Id.* As stated above, in the narrative discussion pertaining to the RFC, the ALJ extensively discussed Plaintiff's medical records, Plaintiff's allegations and oral testimony, and opinion evidence. R. 19-26. The ALJ also used the evidence to support some of her findings in her RFC. For instance, the ALJ stated that

> While [Plaintiff] sometimes displayed a tearful affect on examinations, cried throughout the hearing, and she reported irritability and panic attacks in crowded areas, she also reported being able to drive and shop and she was generally cooperative and engaged with at least fair eye contact on examination, which supports finding her capable of performing tasks that generally involve things instead of people with no contact with the general public, occasional contact with supervisors and coworkers, and no tandem work assignments. R. 25.

The ALJ also remarked that "[w]hile the consultants noted [Plaintiff] can be hard to get along with, she is also tearful upon occasion and as such, 'she has been limited from tasks involving contact with the general public and tandem work assignments.'" *Id.* Yet, nowhere in the RFC discussion does the ALJ explain how she concluded that Plaintiff could work at a sustained rate with the limitation - - "the pace of productivity is not dictated by an external

source over which [Plaintiff] has no control, such as conveyor belts." As mentioned previously, each limitation in Plaintiff's RFC requires an explanation of what evidence the ALJ used, to reach her conclusion. SSR 96-8p, 1996 WL 374184 at *7 (emphasis added). Additionally, the ALJ must provide the logical explanation required to bridge the gap between the evidence and the conclusion. *See Thomas*, 916 F.3d at 311 ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion").

Also troubling is that given the ALJ failed to build a logical bridge from the limitation ("the pace of productivity is not dictated by an external source over which [Plaintiff] has no control, such as conveyor belts,") to the RFC, the Court is left to guess if this limitation affords Plaintiff the ability to perform these tasks for an entire workday as required by the Fourth Circuit. *Thomas*, 916 F.3d at 312 (finding that when a plaintiff has moderate limitations in concentration, persistence, or maintaining pace, the ALJ is expected to include "explicit conclusions about how the plaintiff's mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations" (citing SSR 96-8P, 1996 WL 374184 at *2); *see also Talmo,* 2015 WL 2395108, at *3. This Court has also previously held that—in addition to determining the work functions a claimant is able to do—*Mascio* requires an ALJ to either include an explicit limitation addressing a claimant's ability to sustain those functions throughout a full workday or a sufficiently clear explanation as to why a durational limitation is not necessary.[2]

---

[2] *See, e.g.*, *Parker v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-18-0554, 2019 WL 247539, at *7 (D. Md. Jan. 17, 2019) ("Although the ALJ determined the functions she believed [the claimant] could perform, she failed to discuss [the claimant's] ability to perform those functions throughout a full workday as required by *Mascio*."); *Folsom v. Berryhill*, Civ. No. TMD 16-1681, 2017 WL 4354875, at *3 (D. Md. Sept. 30, 2017) (remanding the case as the ALJ "did not explain how [the evidence] demonstrated that [the claimant] could persist through an eight-hour workday"); *Miles v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-1397, 2016 WL 6901985, at *2 (D. Md. Nov. 23, 2016) ("There is no corresponding restriction for the finding of moderate difficulties in concentration, persistence, or pace, such that it addresses [the claimant's] ability to sustain work throughout an eight-hour workday.").

The ALJ inquired about on-task requirements for jobs that fit into her RFC as well as the tolerance for absenteeism. R. 203-04. The VE testified that the on-task requirement is 15% for unskilled work, and that the acceptable absenteeism rate is less than one day a month. *Id.* It appears the ALJ attempted to address Plaintiff's ability to sustain work for a full workday by finding that:

> "[While] the record supports finding limits on [Plaintiff's] capacity for social interaction, maintenance of productive pace, and ability to complete tasks . . . it does not support finding [Plaintiff] would need more than ordinary breaks while performing, simple, routine tasks."

R. 26. The ALJ also stated, "the preponderance of the evidence fails to support limitations in excess of those found herein, to include regular or excessive absenteeism." *Id.* Due to the issues surrounding the pace limitation as mentioned above, the Court finds that the ALJ did not sufficiently address Plaintiff's ability to perform job-related tasks for a full workday as mandated by *Thomas*. *Thomas*, 916 F.3d at 312. Although the ALJ complied with the holding in *Mascio*[3], and included a pace limitation; without additional explanation, the Court cannot discern whether Plaintiff can perform work at a sustained rate. *See Mascio*, 780 F.3d at 638. The Court finds that remand is necessary as the ALJ did not provide "an accurate logical bridge from [that] evidence to [her] conclusion.'" *See Woods*, 888 F.3d at 694. The ALJ should also address whether Plaintiff can perform and sustain job-related tasks for a full workday.

---

[3] In *Mascio*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a plaintiff to performing only "simple, routine tasks." This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a [plaintiff] suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).

**B.     The ALJ engaged in cherry-picking of the evidence.**

Plaintiff argues that "the ALJ cherrypicked certain normal findings in the records to conclude that those records, do not support finding [Plaintiff] would need more than ordinary breaks while performing, simple routine tasks." Pl.'s Mem. in Supp. of Pl.'s Mot. 17-18. This Court agrees with Plaintiff.

"The ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added). The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

The Court recognizes that the ALJ provided an extensive RFC analysis that both favored and disfavored Plaintiff. However, the record shows that the ALJ focused on facts that support the conclusion that Plaintiff was not disabled and ignored evidence that points to a disability finding. First, the ALJ failed to mention evidence that favored Plaintiff such as Plaintiff had issues with anxiety, but her anxiety became worse after her grandmother died (R. 447); Plaintiff's main stressor is her work (R. 447); Plaintiff has difficulty managing mood swings, grief, anger, anxiety, ADHD, symptoms and stress as evidenced by: panic attacks (difficulty breathing/palpitations), periods of uncontrollable crying, difficulty with focus/concentration, mood swings, increase in anxiety and difficulty managing stressors in her life (R. 452); and [Plaintiff] [felt] overwhelmed at work so she quit. Once she quit, her mood has been a lot better, and she's been a lot less anxious (R. 455).

Second, although the ALJ referenced Plaintiff's treatment records, and generally mentioned Plaintiff's mood and affect, Plaintiff's panic attacks, and Plaintiff's difficulty with focus and attention, the ALJ cherrypicked the evidence that corresponded to a non-disability finding. For instance, the ALJ found that:

> "[W]hile [Plaintiff] . . . reported irritability and panic attacks in crowded areas, she also reported being able to drive and shop . . . which supports finding her capable of performing tasks that generally involve things instead of people with no contact with the general public, occasional contact with supervisors and coworkers, and no tandem work assignments.

R. 25. However, the psychological report conducted on November 12, 2016, discuss Plaintiff's panic attacks, her mood and affect, and her overall presentation, in a more serious manner. The report discusses that she was referred for psychological testing by her nurse practitioner. R. 665. It also states that Plaintiff has a low sense of worthiness; her general cognitive ability is within the extremely low range of intellectual functioning; Plaintiff struggles with paying attention to details; Plaintiff has a tendency to make careless mistakes; and that Plaintiff has an inability to sustain attention on tasks or activities and is distracted by irrelevant stimuli. R. 666-67. Of note is that the report mentions that "she meets the criteria for Panic Disorder, because she has recurrent unexpected panic attacks where she experiences a surge of intense fear or discomfort, that reaches a peak within minutes, along with other symptoms." *Id.* Plaintiff also had panic symptoms during the examination. R. 667. Although the ALJ mentioned this evaluation in her RFC analysis, the only facts she noted from the four-page evaluation was that:

> Plaintiff reported enjoying reading literature and valuing her relationships with friends and family. On testing, [Plaintiff] often gave the correct answer if given additional time. [Plaintiff] was assessed with a panic disorder and major depressive disorder.

R. 23. Given the other limitations that the evaluation cites, the Court finds that the ALJ engaged in cherrypicking. There are also therapy medical records in 2018, that discuss that it is difficult

for Plaintiff to keep focus at times; Plaintiff felt more irritable, short-tempered, manic and felt like her medications were not working; and that Plaintiff cries and sleeps all the time. R. 722-30. Although the ALJ also mentioned these same records, the Court finds that the ALJ continued to engage in cherry-picking, and mainly discussed the evidence that was more favorable to the Social Security Administration. R. 24. While the ALJ is not required to refer to every piece of evidence in his decision, *Thomas*, 916 F.3d at 312, the Court here cannot conduct meaningful review of the record when the evidence the ALJ cites to includes direct contradictions within the same record.

**C.      The ALJ failed to consider reasons why Plaintiff was non-compliant with medication.**

Social Security Regulation 16-3p states that:

> [The SSA] will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *9–10 (Oct. 25, 2017). One of the reasons listed under 16-3p is that "[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms." *Id.* Here, the medical records show that Plaintiff had side effects from the medications, and the record also shows other possible reasons why Plaintiff did not comply with treatment and medication at times. Specifically, the record notes that Plaintiff had side effects from Lamictal, which included blurred vision and dizzy feeling (R. 472); Plaintiff cut the Lamictal dose in half because it initially gave her a headache and to prevent side effects (R. 475); Plaintiff quit Lamictal because it gave her headaches even with the split dose, and she never got a return phone call from her mental health provider (R. 478, 509); When

14

Plaintiff's provider suggested other medications, Plaintiff stated she did not want to take any of them due to the side effects (R. 478); Plaintiff believed she was having a reaction to Abilify (R. 687); Plaintiff complained of hallucinations in the hospital so they told her to stop taking all the medications, as it was possible the combination of medications caused this reaction (R. 188, 687).  The record also states that Plaintiff was resistant to treatment because of differences in opinion regarding mediation (R. 617); Plaintiff was looking for options in medication management and was frustrated that nobody was listening to her (R. 630); and although she was discharged from her mental health provider, they discovered they had her chart mixed up and brought her back in as a patient.  (R. 693).  The ALJ mentions Plaintiff's noncompliance with medication and treatment several times throughout her decision, however she failed to ask Plaintiff any questions on the record inquiring why Plaintiff was noncompliant.  *See Flowers v. Comm'r Soc. Sec.*, No. CV CCB-17-3043, 2018 WL 3068682, at *2 (D. Md. June 21, 2018), report and recommendation adopted, No. CV CCB-17-3043, 2018 WL 4356743 (D. Md. Sept. 12, 2018).  The ALJ here did not follow the protocol instructed in SSR16-3p, and she did not ask Plaintiff, nor discuss possible reasons in her findings why Plaintiff was non-compliant with her medication or treatment.  On remand, the ALJ should comply with SSR 16-3p.

As mentioned above, Plaintiff also raises other issues for review.  However, in view of the Court's decision to remand the matter due to the improper use of the undefined term "production rate pace," the Court declines to address the remaining issues.  *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).

On remand, the ALJ should address the issues raised by Plaintiff. *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019). In remanding this case, the Court expresses no opinion on whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect. *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

### IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

January 3, 2022

/s/
Charles B. Day
United States Magistrate Judge

CBD/pjkm